Nilda CORDERO, et al., Plaintiffs

v.

**TURABO MEDICAL CENTER PARTNERSHIP, et al.,**
**Defendants**

No. 01–1432 (JP).

United States District Court,
D. Puerto Rico.

Oct. 24, 2001.

Manuel Durán–Rodríguez, Esq., San Juan, PR, for Plaintiff.

Godwin Aldarondo–Girald, Angel X. Viera–Vargas, Goldman, Antonetti & Córdova, Laura Maldonado–Rodríguez, San Juan, PR, for Defendant.

## *OPINION AND ORDER*

PIERAS, Senior District Judge.

### I. INTRODUCTION

The Court has before it Defendants Turabo Medical Center Partnership, Inc. ("TMCP") and Centro Médico Del Turabo Inc.'s ("CMT") Motion for Summary Judgment (docket No. 16) and Plaintiffs Nilda Cordero, Modesto Cartagena and Alex Cotto's opposition thereto (docket Nos. 21, 22). Plaintiffs brought suit against Defendants under the anti-retaliation provision of the Fair Labor Standards Act of 1938 ("FLSA") (29 U.S.C. § 215(a)(3)(2001)), claiming that Defendants terminated

1. Plaintiffs originally brought a claim under Puerto Rico Law 115. Plaintiffs voluntarily withdrew this claim and the Court dismissed said claim with prejudice, on July 11, 2001 (docket No. 9).

2. All Parties agree that this position is not a position exempt from the provisions of the FLSA and its Commonwealth counterpart. Furthermore, all parties agree that the Plain-

Plaintiffs' employment in retaliation for Plaintiffs' decision to engage in a protected activity under that Act. In addition, Plaintiffs move this Court to exercise its supplementary jurisdiction to hear local claims under 29 P.R. Laws Ann. § 185*(a)* (1998) ("Law 80") and 29 P.R. Laws Ann. § 245 (1998) ("Law 180")[1].

### II. UNCONTESTED FACTS

Defendants employed Plaintiffs as Electronic Technicians in the Biomedical Department of the Hospital Interamericano de Medicina Avanzada ("HIMA")[2]. Plaintiffs were in charge of fixing and maintaining the electronic and oxygen equipment in the hospital. Additionally, Plaintiffs were required to work "on call" to take care of any emergencies that occurred outside of their eight hour shift. Plaintiffs were compensated for this "on call" duty[3].

On February 14, 2000, all Support Service employees, who were required to perform "on call" services, were notified of a change in compensation for those services. On March 3, 2001, Plaintiffs and nine other employees, who did not work in the Biomedical Department, tendered an internal written grievance to their employer, and verbally complained about the changes that the employer had recently imposed regarding the "on call" shifts' terms and conditions. The written letter stated in its entirety:

On February 14, 2000 a meeting was held to notify employees that a decision to change the incentive salary corre-

tiffs did not belong to any of the appropriate units which collectively bargain with HIMA. In addition, all Parties agree that the HIMA is involved in interstate commerce, as the term is defined under the FLSA.

3. The calculation of this compensation is in debate, as well as its exact classification. *See infra* note 4.

sponding to the "ON CALL" duty, had been made. This change constitutes a salary decrease to less than half of what the salary had been to date. The reason for this decrease was not given at the meeting and not all employees were present. This change was arbitrary and instead of being an employee incentive it minimizes the importance of the work being done now and in the future. We understand that this is unjust treatment towards those of us who are giving our most at all times and we do not agree. (Docket No. 16, Ex. C) (Court's translation)

On March 24, 2000, all Plaintiffs were dismissed from their jobs. Prior to their dismissal from employment, Plaintiffs had never collaborated, or made expressions regarding HIMA's business, before any judicial, legislative or executive forum. The nine signatories of the aforementioned letter, which are not plaintiffs in this action, continued to work for Defendants.

## III. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on

the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. 2505; *Mack v. Great Atl. & Pac. Tea Co., Inc.*, 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a genuine issue for trial. *See id.; Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. ANALYSIS

■ Plaintiffs in this case claim that Defendants terminated their employment in retaliation for lodging written and oral complaints, about the change in compensation for their "on call" duties. Plaintiffs propose that these complaints are protect-

ed by the FLSA and therefore seek redress under the Act. The elements of a retaliation claim under the FLSA require a showing that (1) the plaintiffs engaged in a statutorily protected activity, and (2) their employer thereafter subjected them to an adverse employment action (3) as a reprisal for having engaged in the protected activity. *See Blackie v. State of Maine*, 75 F.3d 716, 722 (1st Cir.1996). The second element of this test is undisputed in this case. Plaintiffs were terminated from their employment. The third element is a question of fact that must be determined by a jury. However, the first element is of pivotal importance in this case. Here, the Court must determine whether or not the grievances lodged by Plaintiffs constitute a complaint protected by the FLSA.

The FLSA's anti-retaliation provision states:

[I]t shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee[.]

29 U.S.C. §§ 215(a)(3) (West 2001).

The First Circuit has spoken directly upon the interpretation of this statutory language in *Valerio v. Putnam Associates*, 173 F.3d 35 (1st Cir.1999). There, the Court held that an internal complaint to the employer may satisfy § 215(a)(3) as equally as well as a complaint filed with a court or agency would. *Id.* at 43. However, the Court pointed out that, "not all abstract grumblings will suffice to constitute the filing of a compliant with one's employer... written comments and criticisms made to an employer may not always amount to filed complaints." *Id.* at 44. It should be noted that the Court declined to determine "whether combined oral and written complaints, or alleged complaints of a wholly oral nature, allow invocation of the protections of § 215(a)(3)." *Id.* at 43 (n.4). In the case at bar, it appears that Plaintiffs verbal complaints imparted essentially the same information as their written grievance. For this reason, this Court focuses its attention on the written complaint recited above.

The *Valerio* court did not create a hard and fast rule as to what would constitute a complaint under § 215(a)(3). Instead, the court found "we have little choice but to proceed on a case-by-case basis, addressing as a matter of factual analysis whether the internal communications to the employer were sufficient to amount to the 'filing of any complaint' within the statutory definition." *Valerio*, at 45. It is under this direction that this Court proceeds to analyze the contents of the written complaint and whether that letter passes muster to garner the protections offered by § 215(a)(3).

In order to guide their analysis, the First Circuit looked to the Supreme Court's interpretation of the broad purpose of the FLSA. The Court held that one of the purposes of the FLSA was to allow "employees seeking to vindicate *rights* claimed to have been denied ..." *Id.* at 42 (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960)) (emphasis supplied). However, this is not to state that a complaint must name the statute, under which the right arises. *See Lambert v. Ackerley* 180 F.3d 997 (9th Cir.1999) (An employee is protected by the FLSA's anti-retaliation provision so long as he communicates the substance of his allegations to his employer, (e.g., that the employer has failed to pay adequate overtime or has failed to pay

minimum wage). However, the employee need not refer to the statute, under which his claim arises, by name).

Other courts have sustained complaints that merely refer to the possibility that some law has been violated. *See E.E.O.C. v. Romeo Community Sch.*, 976 F.2d 985, 989 (6th Cir.1992) (plaintiff who told school district that she believed they were "breaking some sort of law" by paying her lower wages than previously paid to male employees had "filed any complaint" under the FLSA); See *also Malone v. Signal Processing Tech.*, 826 F.Supp. 370 (D.Colo. 1993) (FLSA's anti-retaliation provision protects conduct based on good faith, although mistaken belief that employer's conduct is illegal). However, while a specific law need not be sighted or even known and the claim need not be meritorious, all of the interpretations of the FLSA's anti-retaliation provision contend that the complaint must contain some sort of allegation of illegality in order to be protected under the Act.

■ The Court now turns to the letter filed by Plaintiffs. In its most pertinent portion, the letter states: "This change was arbitrary and instead of being an employee incentive it minimizes the importance of the work being done now and in the future. We understand that this is unjust treatment towards those of us who are giving our most at all times and we do not agree." (Docket No. 16, Ex. C) (Court's translation). The Court finds this letter to be a complaint in the sense that the signatories were complaining about the change in compensation. However, that alone is not sufficient to meet the definition of a complaint under § 215(a)(3).

Plaintiffs allege that the letter asserts their statutory right to overtime.[4] The letter uses the term "unjust" to describe the treatment by Defendants. The word "unjust" is not synonymous with "illegal." Instead, the Court finds that, in the context of this letter, Plaintiffs were stating that the change in compensation was "unfair." This is further substantiated by Plaintiffs' statements that the reduction of pay would demean the importance of their work, not that it was a denial of compensation to which they were entitled. Under the theory that a complaint, for the purposes of § 215(a)(3), must state a denial of a right or some sort of illegal action being performed by an employer, this complaint simply falls short.

■ In order to gain the protection of the FLSA, Plaintiffs must demonstrate that they engaged in a protected activity. *Blackie* 75 F.3d at 722. Plaintiffs have failed to pass this first hurdle. The Court finds that Plaintiffs' grievance cannot be considered a complaint in the sense of § 215(a)(3), and therefore Plaintiffs cannot be afforded any protection under the auspices of the FLSA. For this reason, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion for summary judgment. As there is no independent basis for federal jurisdiction over Plaintiffs' supplemental state law claims, the Court declines to exercise pendent jurisdiction over Plaintiffs' claims under Puerto Rico law. *See* 28 U.S.C. § 1367(c)(3) (West 2000). Therefore, the Court hereby

---

**4.** Plaintiffs allege that compensation under the "On Call" incentive plan should be considered overtime pay while Defendants allege that the compensation should be considered a "pay premium." The Court declines to comment on the definition of this compensation, for it is beyond the scope of the analysis required to determine the sufficiency of Plaintiffs' complaint under § 215(a)(3).

DISMISSES Plaintiffs' pendent claims under Puerto Rico Law **WITHOUT PREJUDICE.**

**IT IS SO ORDERED.**